**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| JAMES HEMBLING and ) | Case No.: 2:26-CW-1778-KCO-KRH |
| JESSICA HEMBLING, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| SANTA BARBARA AT LAGUNA LAKES ) | |
| ASSOCIATION, INC., a Florida ) | |
| not-for-profit corporation; ) | |
| COMPASS ROSE MANAGEMENT, LLC, ) | |
| a Florida limited liability company; ) | |
| and BROOKE WINTERS, individually, ) | |
| ) | |
| Defendants. ) | |
| _____/ | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs James Hembling and Jessica Hembling ("Plaintiffs" or "the
Hemblings"), proceeding pro se, sue Defendants Santa Barbara at Laguna
Lakes Association, Inc. ("the Association"), Compass Rose Management, LLC

("Compass Rose"), and Brooke Winters, individually ("Winters"), and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action arising under the federal Fair Housing Act, 42 U.S.C. §§ 3601 et seq. ("FHA"), the Florida Fair Housing Act, Fla. Stat. §§ 760.20 et seq., and Florida common law, for housing discrimination, failure to accommodate disability, interference with fair housing rights, retaliation, and tortious interference with a residential lease.

2. Plaintiffs are the parents of four minor children, one of whom is diagnosed with autism spectrum disorder and is a person with a disability within the meaning of 42 U.S.C. § 3602(h). The Hembling household is a family with children for purposes of 42 U.S.C. § 3602(k).

3. Plaintiffs have leased the single-family residence at 9310 Paseo de Valencia Street, Fort Myers, Florida 33908 ('the Property') from non-party landlord Matthew Kim since February 1, 2023, a tenancy of approximately two years and four months as of the date of filing. Plaintiffs paid rent and complied with the material terms of their lease throughout, renewed their lease in February 2024 and again in March 2025 without incident.

4.      On March 3, 2026, Plaintiffs and Mr. Kim executed a one-year written residential lease for the term March 8, 2026 through March 7, 2027. Within three days of the lease's execution, Defendants moved to defeat it through a pattern of pretextual covenant enforcement, refusal of any opportunity to be heard, and ultimately coercion of the landlord.

5.      Among the items Defendants cited as violations were disability-accommodation items used in the care of Plaintiffs' disabled child, including a wicker egg-shaped tree swing the child uses to self-regulate anxiety. Defendants never inquired about the function of these items, never engaged in any interactive accommodation process, and never afforded Plaintiffs an opportunity to be heard.

6.      Defendants also threatened the landlord, Mr. Kim, with fines and attorney's fees if he honored the lease. Mr. Kim, who resides in Michigan and had no independent dispute with Plaintiffs, capitulated to that pressure and issued a notice to vacate.

7.      On June 3, 2026, Plaintiffs are scheduled to surrender possession of the Property under duress as a direct result of Defendants' conduct. Plaintiffs bring this action for damages, declaratory relief, and injunctive relief.

# JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617.

9. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the federal claims.

10. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Lee County, Florida, which lies within the Fort Myers Division of this District. See M.D. Fla. Loc. R. 1.04.

11. Plaintiffs have satisfied any administrative prerequisites applicable to their claims. A complaint of housing discrimination concerning the same conduct was filed with the Florida Commission on Human Relations on April 17, 2026 (FCHR Case No. 2026121062), and a parallel complaint was initiated with the U.S. Department of Housing and Urban Development on or about May 1, 2026. Exhaustion of administrative remedies is not required for the FHA claims asserted herein. See 42 U.S.C. § 3613(a)(2).

## PARTIES

12. Plaintiff James Hembling is an adult resident of Lee County, Florida, and at all times material was the named tenant under the March 3, 2026 residential lease for the Property.

13. Plaintiff Jessica Hembling is an adult resident of Lee County, Florida, and at all times material was a named occupant under the lease and a co-parent of the four minor children residing in the household, including a child with a documented disability.

14. Defendant Santa Barbara at Laguna Lakes Association, Inc. is a Florida not-for-profit corporation organized under Chapter 720, Florida Statutes, with its principal place of business in Lee County, Florida. The Association is the homeowners' association with covenant-enforcement authority over the Property and acts through its board of directors, officers, employees, agents, and retained professionals.

15. Defendant Compass Rose Management, LLC is a Florida limited liability company that serves as the management company for the Association. Compass Rose acts as the Association's agent in covenant enforcement, communications with owners and occupants, recordkeeping, and management of community access. Compass Rose additionally acts in its own corporate capacity through its officers, employees, and licensed

community association managers, and is liable both as the Association's agent and as a direct actor in the conduct described herein.

16. Defendant Brooke Winters is a licensed Florida community association manager (CAM) employed by Compass Rose Management, LLC, and at all times material served as the CAM assigned to the Association. Winters is sued in her individual capacity for conduct in violation of 42 U.S.C. § 3617, including her personal communication of decisions denying Plaintiffs' lease renewal, her personal refusal to grant Plaintiffs a hearing, her personal refusal to acknowledge Plaintiffs' cure documentation, and her personal participation in the coordinated effort to displace Plaintiffs from the Property after she received written notice that Plaintiffs considered Defendants' conduct discriminatory under the Fair Housing Act and gave notice of intent to file FCHR and HUD complaints.

# FACTUAL ALLEGATIONS

## A. *The Hembling Family and the Property*

17. Plaintiffs began renting the Property from Mr. Kim on February 1, 2023, under a written annual lease.

18. The Hembling household consists of Plaintiffs and their four minor children: a son born 2013 ("the Disabled Child"), who has been diagnosed with autism spectrum disorder; a daughter born 2014; a daughter born 2021; and a son born 2023.

19. As a result of the Disabled Child's diagnosis, the household maintains and uses specialized equipment and items related to the child's care, development, and sensory regulation needs. Among these items is a wicker egg-shaped tree swing positioned in the backyard of the Property, which the Disabled Child uses to self-regulate anxiety by sitting in it and looking at the adjacent pond and fountain.

20. Plaintiffs renewed their lease in February 2024 and again in March 2025 without objection or any communication of concern from Defendants. At no time did Defendants identify or cite any payment default, lease violation, or other concern as grounds for the enforcement actions described herein prior to the March 5, 2026 denial letter.

## B. The Deactivated Resident Gate Access

21. The Property is located in a gated community. Residents receive a resident sticker affixed to their vehicles that activates automatic gate access. Visitors must be admitted through the gatehouse, which calls the resident to confirm admission of each guest.

22. On or about March 9, 2026, Defendants deactivated Plaintiffs' resident gate access credential without prior notice or stated basis. From that date forward — including through the forced June 3, 2026 departure — Plaintiffs are required to be admitted through the gatehouse on each entry to the community as if they were guests at their own residence.

23. The deactivation generated a recurring record of gatehouse calls to Plaintiffs' telephone, as reflected in Plaintiffs' phone records. On information and belief, Defendants did not similarly deactivate the resident gate credentials of similarly situated residents during the same period.

24. The deactivation constituted an adverse alteration of the terms, conditions, and services connected with Plaintiffs' tenancy and was a direct precursor to the escalation of formal enforcement activity described below.

## C. The Pattern of Selective Enforcement

25. On information and belief, Defendants initiated, encouraged, and coordinated covenant-enforcement activity directed at the Property that was disproportionate to, and inconsistent with, Defendants' enforcement against similarly situated households in the community that did not include families with minor children or persons with disabilities.

26. At all times material to this Complaint, the Property's immediately adjacent neighbor served simultaneously as Treasurer of the Association and of the master association governing the broader Laguna Lakes community. The adjacent neighbor's residence shares a property line with the Property and afforded direct, daily visual access to the Property and its backyard. Plaintiffs are informed and believe, and on that basis allege, that the adjacent neighbor communicated with members of the Board of Directors, with Compass Rose personnel, and with Defendant Winters concerning the Property during the period material to this Complaint, and that the nature and extent of those communications will be established through discovery.

27. Defendants' claimed grounds for action against the Property included (a) allegations that the garage door was left open, (b) allegations regarding personal property stored outside the unit, (c) an allegation that the Property was used for a business, and (d) an allegation of an 'unlawful

action' predicated on information concerning Plaintiff James Hembling that had been sealed by judicial order and was not the subject of any criminal charge or conviction.

28. Each of those grounds was either factually inaccurate, addressed an item or use related to the care of the Disabled Child, pursued without the notice and opportunity to cure required by the Association's governing documents and Florida law, or relied on information Defendants were not entitled to obtain or use.

29. Defendants' allegation regarding personal property stored outside the unit did not identify or describe any specific item. The only personal items belonging to Plaintiffs located outside the residence at any material time were three items situated in the backyard of the Property: a children's playhouse, a Little Tikes slide, and the wicker egg-shaped tree swing used by the Disabled Child for sensory regulation. Plaintiffs are informed and believe, and on that basis allege, that these were the items to which Defendants' allegation referred.

30. At no time did Defendants contact Plaintiffs to inquire about the function of these items, engage in any interactive process regarding their connection to a disability, request documentation of the Disabled Child's needs, or propose any accommodation or modification that would permit their continued use.

31. On information and belief, Defendants did not pursue comparable enforcement, on the same timeline or with comparable consequences, against other households in the community storing outdoor items of comparable visibility and function that were not associated with the care of a disabled child.

### D. The March 2026 Denial, Cure, and Refusal of Hearing

32. On March 3, 2026, Plaintiffs and Mr. Kim executed a written one-year Florida Residential Lease Agreement for the term March 8, 2026 through March 7, 2027 ("the 2026 Lease"). The 2026 Lease was signed by both parties and includes monthly rent, a security deposit, the statutorily required Florida disclosures, an Electronic Delivery of Notices Addendum signed by both parties, and a Security Deposit Receipt.

33. On March 5, 2026, Compass Rose, through Assistant CAM Amy Conte and copying Defendant Winters, transmitted a denial letter to Mr. Kim concerning the 2026 Lease.

34. On March 6, 2026, Mr. Kim forwarded the denial letter to Plaintiffs. Within hours of receipt, Plaintiffs:

35. (a) Transmitted a written response to Compass Rose and Mr. Kim that morning, addressed to Winters and the Compass Rose team, attaching cure documentation and requesting reconsideration;

Page 11 of 33

36.   (b) Paid $851.76 that afternoon to College Hunks Hauling Junk and Moving, a professional service, to ensure complete remediation of any items that could be considered "bulk storage" or garage-related violations; and

37.   (c) Received from Winters, the same morning, an acknowledgment stating: "Thank you for your letter. I will forward this over to the Board for consideration."

38.   On March 9, 2026, Plaintiffs transmitted to Winters an additional current photograph of the garage to further document the cure.

39.   Between March 9, 2026 and March 31, 2026, Winters communicated nothing to Plaintiffs regarding the status of the reconsideration. During this period of silence, on a date in the window of March 9 through March 12, 2026, Winters caused herself to be admitted to the gated community as a guest of the Property without notice to Plaintiffs and without ever arriving at Plaintiffs' residence, despite Plaintiffs being home and available. Plaintiffs learned of this admission only because the gatehouse called to obtain authorization for the entry.

40.   On information and belief, during the same period, Defendants conducted further enforcement-related activity concerning the Property, including communications and meetings between Compass Rose personnel, members of the Association's Board of Directors, and other

Association agents, while deliberately excluding Plaintiffs from any direct communication.

41. On March 31, 2026, twenty-five days after receiving Plaintiffs' cure response, Winters communicated in writing that the Board had "reviewed the letter of consideration" and "decided to uphold its original decision to deny the lease." Winters stated that the decision was based on "the numerous ongoing issues associated with the property," but did not identify any specific ongoing issue, did not address the cure documentation Plaintiffs had submitted, and did not acknowledge the professional remediation Plaintiffs had completed at their own expense.

42. Later that same day, March 31, 2026, Plaintiffs transmitted a formal written Request for Reconsideration, Procedural Clarification, and Impact Statement. The Request:

43. (a) Formally requested a hearing before the Board;

44. (b) Requested verification of cure status through a property walkthrough;

45. (c) Submitted a records request under Fla. Stat. § 720.303, including a request for all lease denials issued by the Association over the previous 24 months for the purpose of evaluating selective enforcement;

46. (d) Expressly invoked Plaintiffs' status as a family with four minor children as a protected class under the Florida Fair Housing Act; and

47.  (e) Provided written notice that Plaintiffs were prepared to file formal complaints with the Florida Commission on Human Relations and the U.S. Department of Housing and Urban Development to investigate whether the denial was discriminatory in nature.

48.  On April 1, 2026, Winters responded in writing on behalf of Defendants. The April 1 response: (a) refused to schedule a hearing, stating "the Board has completed its review of the reconsideration request and will not be scheduling a further hearing on this matter"; (b) refused the records request on the asserted ground that "any official records request should be submitted by the owner of record"; (c) instructed that further communication be conducted by the owner directly through management or legal counsel; and (d) made no response whatsoever to Plaintiffs' express invocation of fair housing protections or the protected status of their family with four minor children.

49.  The April 1 response constitutes Defendants' express written refusal to provide Plaintiffs a hearing, refusal to engage with Plaintiffs as tenants, and refusal to address Plaintiffs' written assertion of fair housing rights, after Defendants were on notice of Plaintiffs' status as a protected class and of Plaintiffs' stated intention to file FCHR and HUD complaints.

### E. The April 23, 2026 Letter and Retaliation Following Assertion of FHA Rights

50. On April 23, 2026, twenty-two days after Plaintiffs' April 1 written assertion of fair housing rights, the Association, acting through retained counsel Simons Law Group, PLLC, transmitted a letter ("the April 23 Letter") addressed to both Mr. Kim, as owner, and Plaintiffs, as tenants. The April 23 Letter announced a "Final Decision" denying renewal of Plaintiffs' tenancy and demanding that Plaintiffs vacate the Property by May 31, 2026.

51. The April 23 Letter further stated that the Association "will not respond to further communications regarding said lease."

52. The April 23 Letter expressly threatened Mr. Kim with fines, attorney's fees, and costs pursuant to Section 9.6 of the Association's Declaration if he did not cause Plaintiffs to vacate.

53. The April 23 Letter contained a written assertion concerning an alleged 'unlawful action' by Plaintiff James Hembling, the underlying facts of which had been sealed by judicial order prior to the publication of the April 23 Letter. No criminal charges were filed in connection with the underlying matter, and no conviction was entered. The publication of sealed-record information to a third party, Mr. Kim, was unauthorized and constituted a knowing or reckless disclosure of sealed information,

undertaken as one of the asserted grounds for the displacement of Plaintiffs from the Property. The implication conveyed by the April 23 Letter that Plaintiff James Hembling had committed an unlawful action was false and misleading. The matter referenced was not the subject of any criminal charge or conviction, was sealed by judicial order, and the sealed status was itself a determination that the matter was not appropriately subject to public reference. The publication of a sealed-record reference in this context conveyed to the recipient a false impression that substantive unlawful conduct had occurred, when the procedural disposition of the matter — declined prosecution and judicial sealing — was itself evidence that no such conduct was substantiated.

54. The April 23 Letter further demanded the removal of a public-interest website operated by The Laguna Lakes Transparency Project, Inc., a registered Florida not-for-profit corporation, and demanded a personal letter of apology to Defendant Winters.

55. Each of the escalations contained in the April 23 Letter — including the publication of the false criminal allegation, the threats against the landlord, the demand for takedown of the transparency website, and the Association's written declaration that it would not respond to further communications regarding the lease — was undertaken with documented knowledge of Plaintiffs' April 1 written assertion of fair

housing rights and constituted retaliation for that assertion within the meaning of 42 U.S.C. § 3617. The simultaneous closure of all further dialogue, on the same occasion as the publication of the false criminal allegation and financial threats to the landlord, is itself evidence of the retaliatory character of the April 23 Letter as a whole.

## F. The Coercion of the Landlord and the May 21 Admissions

56. Mr. Kim resides in the State of Michigan and had no independent dispute with Plaintiffs at the time of the April 23 Letter.

57. Following receipt of the April 23 Letter and additional communications from Defendants, Mr. Kim communicated to Plaintiff James Hembling that Defendants had threatened him with fines and attorney's fees if he did not cause Plaintiffs to vacate. Under that pressure, and notwithstanding the existence of the fully executed 2026 Lease, Mr. Kim issued an email notice to vacate.

58. But for Defendants' threats and coordinated pressure, Mr. Kim would have continued to perform under the 2026 Lease.

59. On May 21, 2026, the Association, through counsel, transmitted a letter responding to Plaintiffs' pre-suit demand ("the May 21 Letter"). In the May 21 Letter, counsel for the Association expressly stated that the Association had "discussed the matter with Mr. Kim" and that Mr. Kim

was "in agreement with Board's decision to deny [Plaintiffs'] lease renewal."

60. The May 21 Letter further disclosed knowledge of a private arrangement between Plaintiffs and Mr. Kim for a final walk-through of the Property on June 3, 2026, an arrangement Plaintiffs had not communicated to the Association, evidencing ongoing communication between Mr. Kim and the Association concerning Plaintiffs' tenancy throughout this period.

## G. Constructive Displacement and Damages

61. Plaintiffs are filing this Complaint on May 28, 2026, while still in physical possession of the Property, to make clear on the record that their surrender of possession on June 3, 2026, is involuntary, taken under duress, and constitutes the completion of Defendants' constructive eviction of Plaintiffs from the Property.

62. Faced with Defendants' escalating financial pressure on the landlord, the publication of false and misleading information concerning Plaintiff James Hembling, the total refusal of any procedural opportunity to be heard, and the Association's written declaration that it would not respond to further communications, Plaintiffs have no lawful alternative but to surrender possession on June 3, 2026, under protest, in order to protect the landlord from continued retaliatory enforcement.

63. Plaintiffs' surrender of possession was not voluntary. It was the direct and foreseeable result of Defendants' interference with the 2026 Lease and Defendants' threats against the landlord.

64. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages including but not limited to:

65. (a) Documented out-of-pocket cure expenses, including $851.76 paid to professional remediation services on March 6, 2026, in good-faith reliance on Defendants' stated covenant concerns;

66. (b) Emergency and ongoing relocation costs, including moving expenses, new security deposits, new application fees, and utility transfer costs;

67. (c) The differential between the rent payable under the 2026 Lease and replacement housing costs over the unexpired term of the 2026 Lease;

68. (d) Loss of the benefit of the 2026 Lease;

69. (e) The burden on Plaintiffs as primary caregivers of managing disruption to the established environment, routine, sensory regulation, therapy, and care arrangements for their household, including their disabled son, under displaced circumstances;

70. (f) Emotional distress to Plaintiffs, including distress arising from the impact of Defendants' conduct on their family; and

71. (g) Other consequential damages, in amounts to be proven at trial.

## COUNT I

### Violation of the Fair Housing Act – 42 U.S.C. § 3604(a) and (b)
### (Discrimination on the Basis of Familial Status and Disability)
### (Against the Association and Compass Rose)

72. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

73. Section 3604(a) of the FHA makes it unlawful to refuse to rent, or to otherwise make unavailable or deny, a dwelling to any person because of familial status or handicap. Section 3604(b) makes it unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status or handicap.

74. Plaintiffs are members of two protected classes under the FHA: familial status, as parents residing with their four minor children, and handicap, by association with their disabled child.

75. The Association and Compass Rose, acting directly and through their agents, engaged in covenant-enforcement, gate-access, and lease-renewal conduct that made the Property unavailable to Plaintiffs and altered the terms, conditions, services, and facilities of their tenancy on the basis of Plaintiffs' protected characteristics.

76. The deactivation of Plaintiffs' resident gate access credential without explanation, while continuing to permit similarly situated residents, on information and belief, to retain such credentials, constituted discrimination in the provision of services and facilities connected with the rental within the meaning of § 3604(b).

77. The non-discriminatory justifications Defendants offered for the lease denial are pretextual. The asserted violations were either factually false, applied unevenly relative to similarly situated households, or directed at items used in the care of the Disabled Child. The pretextual nature of the asserted violations is established by, among other things, Defendants' refusal to specify the "ongoing issues" they cited; Defendants' refusal to acknowledge Plaintiffs' documented and professionally remediated cure; and Defendants' refusal to provide Plaintiffs with the records necessary to evaluate selective enforcement.

78. Plaintiffs have suffered injury, including the damages identified in the preceding paragraphs, as a direct and proximate result of Defendants' violations of 42 U.S.C. § 3604(a) and (b).

---

## COUNT II

**Violation of the Fair Housing Act – 42 U.S.C. § 3604(f)(3)(B)**
**(Failure to Make Reasonable Accommodation)**
**(Against the Association and Compass Rose)**

79. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

80. Section 3604(f)(3)(B) of the FHA makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling."

81. Plaintiffs' Disabled Child is handicapped within the meaning of 42 U.S.C. § 3602(h). The sensory regulation needs associated with his autism spectrum disorder diagnosis are documented by a licensed psychiatrist and a behavioral psychologist.

82. Defendants possessed actual or constructive knowledge of the Disabled Child's disability and the disability-accommodation function of items at the Property prior to the actions challenged in this Complaint. The next-door neighbor, who at all material times served as Treasurer of the Association, possessed direct, unobstructed visual access from the adjacent property to the Property's backyard, where the disability-accommodation items were positioned. On information and belief, the

next-door neighbor and Treasurer participated in the coordination of the enforcement activity. Under standard agency principles, knowledge possessed by an officer of the Association is imputable to the Association.

83. Defendant Winters, acting as the Association's licensed Community Association Manager, possessed actual physical opportunity to observe the items at the Property when she caused herself to be admitted to the gated community as a guest of the Property between March 9 and March 12, 2026, without contacting Plaintiffs and without arriving at the residence to engage Plaintiffs in any inquiry. Despite this physical presence at the Property, Winters did not engage in any interactive inquiry regarding the items observed or their function.

84. Defendants' direct communications with Mr. Kim concerning Plaintiffs' tenancy, expressly acknowledged in Defendants' May 21, 2026 written correspondence, provided Defendants with access to information Mr. Kim possessed about Plaintiffs' household. Plaintiffs had communicated to Mr. Kim, on multiple occasions during the tenancy, that the household included a child diagnosed with autism spectrum disorder requiring specialized care arrangements.

85. The duty to provide reasonable accommodation under 42 U.S.C. § 3604(f)(3)(B) carries with it a corresponding duty to engage in a meaningful interactive process. See Bhogaita v. Altamonte Heights

Condominium Association, 765 F.3d 1277 (11th Cir. 2014). On March 31, 2026, Plaintiffs formally requested a hearing and a verification walkthrough, expressly invoking their protected status under the Fair Housing Act. On April 1, 2026, Defendants issued a categorical refusal to schedule any hearing and directed that Plaintiffs cease direct communication with Defendants. This refusal foreclosed any opportunity for Plaintiffs to formally present medical documentation, to identify the specific items at issue, or to engage in the interactive accommodation process before Defendants moved to displace Plaintiffs through pressure on the landlord. Under Bhogaita, the refusal of any meaningful review of accommodation issues constitutes constructive denial of reasonable accommodation.

86. The wicker egg-shaped tree swing positioned in the backyard of the Property is necessary to afford the Disabled Child equal opportunity to use and enjoy the dwelling, in that it serves a documented sensory regulation function directly tied to his diagnosis.

87. Defendants knew or should have known that items in Plaintiffs' backyard were used in connection with the care of a child residing in the household, and any reasonable interactive inquiry would have established the function of the items at issue.

88.  Plaintiffs requested accommodation, both implicitly through the presence and use of the items and explicitly through formal written requests for reconsideration, a hearing, and an opportunity to verify the cured status of the Property. Defendants refused each such request without inquiry, without engaging in any interactive process, and without considering any modification of enforcement that would permit the items' continued use.

89.  Under Eleventh Circuit precedent, a housing provider's refusal to engage in meaningful review of an accommodation issue constitutes constructive denial of a reasonable accommodation. See Bhogaita v. Altamonte Heights Condo. Ass'n, 765 F.3d 1277 (11th Cir. 2014). Defendants' total refusal to engage in any inquiry whatsoever, combined with their refusal to grant any hearing, constitutes such a constructive denial.

90.  Plaintiffs have suffered injury, including the damages identified in the preceding paragraphs, as a direct and proximate result of Defendants' violation of 42 U.S.C. § 3604(f)(3)(B).

## COUNT III

### Violation of the Fair Housing Act – 42 U.S.C. § 3617
### (Coercion, Intimidation, Threats, Interference, and Retaliation)
### (Against All Defendants)

91.  Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

92.  Section 3617 of the FHA makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, any right granted or protected by sections 3603 through 3606 of Title 42. Section 3617 reaches post-acquisition conduct directed at persons already in possession of housing. See 24 C.F.R. § 100.400.

93.  Plaintiffs' occupancy of the Property as a family with minor children, including a child with a disability, and Plaintiffs' use of equipment and items in the care of that child, constituted the exercise of rights protected by Section 3604.

94.  Plaintiffs' April 1, 2026 written assertion of fair housing rights, express identification of their protected status as a family with four minor children, and express notice of intent to file complaints with the Florida Commission on Human Relations and the U.S. Department of Housing

and Urban Development, constituted the exercise of additional rights protected by the FHA.

95. Defendants coerced, intimidated, threatened, and interfered with Plaintiffs' exercise of those rights through multiple discrete acts, including but not limited to:

96. (a) Deactivating Plaintiffs' resident gate access credential without explanation, requiring Plaintiffs to be admitted as guests at their own residence;

97. (b) Refusing to grant Plaintiffs any hearing on the asserted covenant violations despite Plaintiffs' formal written request, in violation of basic procedural protections and the Association's governing documents;

98. (c) Refusing to acknowledge or address Plaintiffs' documented and professionally remediated cure of the asserted violations;

99. (d) Conducting an unannounced site visit by Defendant Winters within the gated community using Plaintiffs' guest admission credentials, without any contact with Plaintiffs, during the period of silence between Defendants' acknowledgment of receipt of Plaintiffs' cure documentation and the March 31, 2026 'uphold' decision;

100. (e) Publishing a false criminal allegation concerning Plaintiff James Hembling to the landlord, Mr. Kim, by means of the April 23 Letter;

101. (f) Threatening the landlord with fines and attorney's fees in order to coerce his termination of the 2026 Lease and the displacement of Plaintiffs from the Property;

102. (g) Demanding takedown of a public-interest website operated by The Laguna Lakes Transparency Project, Inc., as part of a coordinated demand for Plaintiffs' vacatur of the Property; and

103. (h) Each of the above acts, to the extent undertaken or continued after April 1, 2026, constituting retaliation for Plaintiffs' express written assertion of fair housing rights.

104. Defendant Winters personally communicated decisions denying Plaintiffs' lease renewal, personally refused to grant Plaintiffs a hearing, personally refused to acknowledge Plaintiffs' cure documentation, personally conducted the unannounced site visit, and personally responded to Plaintiffs' April 1 assertion of fair housing rights with refusal of due process and direction that further communication be conducted through the owner and legal counsel. Winters' personal conduct constitutes individual interference within the meaning of 42 U.S.C. § 3617.

105. Defendants' conduct constituted unlawful interference within the meaning of 42 U.S.C. § 3617 and 24 C.F.R. § 100.400.

106. Plaintiffs have suffered injury, including the damages identified in the preceding paragraphs, as a direct and proximate result of Defendants' violations of 42 U.S.C. § 3617.

---

## COUNT IV

**Violation of the Florida Fair Housing Act – Fla. Stat. §§ 760.20 et seq.**
**(Against All Defendants)**

107. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

108. The Florida Fair Housing Act, Fla. Stat. §§ 760.20 through 760.37, prohibits discrimination in housing on the basis of familial status and handicap, in substantially the same manner as the federal Fair Housing Act, and additionally prohibits coercion or interference with the exercise of protected rights under Fla. Stat. § 760.37.

109. The conduct described herein violates Fla. Stat. § 760.23, including but not limited to its provisions prohibiting making housing unavailable, discriminating in terms or conditions, discriminating in the provision of services or facilities, and failing to make reasonable accommodations necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling.

110. The conduct described herein further violates Fla. Stat. § 760.37, which prohibits coercion, intimidation, threats, or interference with the exercise of fair housing rights.

111. Plaintiffs filed a timely complaint with the Florida Commission on Human Relations on April 17, 2026, FCHR Case No. 2026121062.

112. Plaintiffs have suffered injury, including the damages identified in the preceding paragraphs, as a direct and proximate result of Defendants' violations of the Florida Fair Housing Act.

---

## COUNT V

### Tortious Interference with a Contractual Relationship
### (Against the Association and Compass Rose)

113. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

114. A valid and enforceable contract existed between Plaintiffs and Mr. Kim, namely the 2026 Lease executed on March 3, 2026 for the term March 8, 2026 through March 7, 2027.

115. Defendants had actual knowledge of the 2026 Lease no later than March 5, 2026, when Compass Rose transmitted the denial letter referencing the lease, and at all times material thereafter.

116. Defendants intentionally and without justification procured the breach or premature termination of the 2026 Lease by threatening Mr. Kim with fines, attorney's fees, and costs pursuant to Section 9.6 of the Association's Declaration if he honored the lease, and by directing Mr. Kim to communicate exclusively through legal counsel.

117. Defendants' conduct was not privileged. The Association's covenant-enforcement powers do not authorize the coercion of an owner to terminate a private residential lease in furtherance of unlawful housing practices. Where, as here, the underlying enforcement is itself pretextual and the procedural mechanisms for review have been refused, no privilege protects the resulting interference.

118. As a direct and proximate result of Defendants' interference, Plaintiffs lost the benefit of the 2026 Lease and suffered damages, including but not limited to relocation costs, increased housing costs over the unexpired term of the 2026 Lease, the documented out-of-pocket cure expenses identified above, and consequential losses associated with the disruption of the household and the care of the Disabled Child.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally where appropriate, and grant the following relief:

a.    Compensatory damages in an amount to be proven at trial;

b.    Punitive damages under 42 U.S.C. § 3613(c)(1) and applicable Florida law against those Defendants whose conduct was malicious or in reckless disregard of Plaintiffs' federally protected rights;

c.    Declaratory relief establishing that Defendants' conduct violated the federal Fair Housing Act and the Florida Fair Housing Act;

d.    Injunctive relief restraining Defendants from further discriminatory conduct, retaliation, or interference with Plaintiffs' fair housing rights, and requiring appropriate policy and training reforms;

e.    Reasonable attorney's fees and costs to the extent recoverable, and in any event all taxable costs of this action under 42 U.S.C. § 3613(c)(2) and Fed. R. Civ. P. 54(d);

f.    Pre-judgment and post-judgment interest at the maximum lawful rate; and

g.    Such other and further relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38(b).

Dated: May 28, 2026

Respectfully submitted,

James R. Hembling, Plaintiff Pro Se
1349 Eagle Run Drive
Sanibel, Florida 33957
Telephone: (239) 565-3357
Email: James@Hembling.net

Jessica A. Hembling, Plaintiff Pro Se
1349 Eagle Run Drive
Sanibel, Florida 33957
Telephone: (239) 233-7983
Email: Jessica@Hembling.net